## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:04-cr-00155-TWP-MJD-1 |
| | ) | |
| ANTONIO MENDOZA, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY GRANTING MOTION FOR SENTENCE REDUCTION

This matter is before the Court on Defendant Antonio Mendoza's ("Mendoza") Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) and newly amended U.S.S.G. § 1B1.13. (Dkt. 91.) For the reasons explained in this Entry, Mendoza's Motion is **granted**. The Government has requested an opportunity for further briefing. (Dkt. 97 at 2.) This request is **denied.**

## I.      BACKGROUND

In 2008, after a three day trial, a jury found Mendoza guilty of Count One: possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II, Non-Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); and Count Two: possession with the intent to distribute more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II, Non-Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). Testimony at trial established that Mendoza used at least three others to deliver methamphetamine and he supplied the methamphetamine for a controlled buy in January 2002. *United States v. Mendoza*, 346 F. App'x 112, 113–16 (7th Cir. 2009).

Prior to the sentencing hearing, the U.S. Probation Office prepared a Presentence Investigation Report (Dkt. 60). Mendoza was found to be responsible for 6.8 kilograms of methamphetamine. *Id*. at ¶ 26. As a career offender, he was found to have a Criminal History Category of VI. *Id*. at ¶ 46. Count One and Count Two were grouped pursuant to U.S.S.G. § 3D1.2(d), and Mendoza's base offense level was calculated at a 36. *Id.* at ¶ 26. Because Mendoza was an organizer or leader of a conspiracy involving at least five participants his base level was increased by four levels pursuant to U.S.S.G. § 3B1.1(a). *Id*. at ¶ 29. Based on a total offense level of 40 and a Criminal History Category of VI, the guideline range was 360 months to life. *Id*. at ¶ 75. The mandatory statutory minimum term of imprisonment for Counts One and Two was life because Mendoza has two prior felony drug convictions. *Id*. at ¶ 74. Mendoza had no objections to the guideline calculations, and they were accepted by the Court. On September 26, 2008, then-District Judge David Hamilton[1] noted that the sentencing guidelines produced a "guideline range of 360 months to life in prison; however, in this case, under 21 U.S.C. Section 841, because of the information filed under Section 851, the Court has no choice but to impose a life sentence." (Dkt. 97-1 at 4). Mendoza was sentenced to a term of life imprisonment on each count, to be served concurrently, followed by a 10-year term of supervised release. (Dkt. 49-7 at 3.) In pronouncing the sentence, Judge Hamilton stated:

> You have made a career illegally in the United States of distributing first, heroin and then methamphetamine, and this severe sentence is appropriate under the law. There are no mitigating factors that I am aware of even if I had any discretion to do anything less. Those are the reasons why the sentence will be as stated.

(Dkt. 97-1 at 7).

Mendoza filed his first motion for compassionate release in 2020 (Dkt. 36). In that motion, he argued that he was entitled to compassionate release for two reasons: (1) he would have received

---

[1] The undersigned did not preside over Mendoza's trial or sentence him. (Dkt. 1 at 7).

a substantially shorter sentence if he had been sentenced at the time of his motion, and (2) the COVID-19 pandemic placed him at risk of serious health consequences particularly in light of his medical conditions. The Court denied his motion finding that he had insufficient evidence to support his pandemic-related contentions and that *Thacker*[2] precluded relief based on a change in the law creating a sentencing disparity. (Dkt. 81 at 4–6.)

On April 27, 2023, the Sentencing Commission adopted a rule concerning unusually-long-sentences, which states:

> Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (p.s.); see also U.S.S.G. § 1B1.13(c) (p.s.).

Following imposition of U.S.S.G. § 1B1.13(b)(6), Mendoza filed the instant Motion for Compassionate Release, again asserting that if he "were sentenced today for the same offense, he would face a 10-year mandatory minimum sentence and a Guidelines range much shorter than life imprisonment." (Dkt. 91 at 1). Mendoza is now 56 years old. He argues this Court should grant his motion and "impose a sentence in accord with common sense" as "he does not deserve to die in prison." *Id.*

The Government has filed a response in opposition (Dkt. 97). The Government argues that even if the Sentencing Commission's new policy statement applied, there is no "gross disparity"

---

[2] *See United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021) (holding that a non-retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i) and that a district court cannot consider such a change, whether alone or in combination with any other factor, when determining whether a defendant has established extraordinary and compelling reasons potentially warranting a sentence reduction).

3

between the life sentence Mendoza received in 2008 and the sentence he would likely receive if he had been sentenced in 2023 when he filed the instant motion. *Id*. at 2. The Government points out that under current law, Mendoza's guidelines range would still be 360 months to life, meaning that his life sentence would still be a guideline sentence. The Government also argues Mendoza has not shown that he is not a danger to the community. *Id*. The Government asks the Court to "first address the foundational legal question—did the Sentencing Commission have the authority to enact § 1B1.13(b)(6)?" *Id*. Should this Court determine that the new guideline provision is valid, they seek an opportunity to further supplement their briefing and allow them to address the § 3553 factors and the ultimate sentence in a supplement. (Dkt. 97 at 2.)

Mendoza filed a reply, (Dkt. 102), and a supplemental submission, (Dkt. 103). The motion is now ripe for the Court's consideration.

## II.    <u>LEGAL BACKGROUND</u>

Prior to 1984, "the Federal Government employed in criminal cases a system of indeterminate sentencing" with wide sentencing boundaries for trial judges who exercised "almost unfettered discretion." *Tapia v. United States*, 564 U.S. 319, 323 (2011) (quoting *Mistretta v. United States,* 488 U.S. 361, 363 (1989)). This model fell into disfavor due to doubts that prison programs were able to rehabilitate offenders and because of large sentencing disparities between similarly situated defendants. *Id.* at 324.

These concerns led Congress to enact the Sentencing Reform Act of 1984, "overhaul[ing] federal sentencing practices." *Id.* at 325. The Sentencing Reform Act established the United States Sentencing Commission ("Sentencing Commission"), which promulgates sentencing guidelines that replace indeterminate sentencing and parole with "a range of determinate sentences for categories of offenses and defendants." *Id.* (quoting *Mistretta,* 488 U.S. at 368). Congress also

4

specified that a "court may not modify a term of imprisonment once it has been imposed" with certain exceptions. 18 U.S.C. § 3582(c). One such exception allowed a court to "reduce the term of imprisonment … after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A), (A)(i). As enacted in 1984, the Sentencing Reform Act permitted such reduction only "upon motion of the Director of the Bureau of Prisons." 18 U.S.C. § 3582(c)(1)(A) (Effective: Nov. 2, 2002 to Dec. 20, 2018). These motions are sometimes referred to as "compassionate release" motions because they would often be used to seek a sentence reduction that would result in immediate release.

Congress also instructed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of" these sentence reductions. 28 U.S.C. § 994(a)(2). Accordingly, the Sentencing Commission promulgated United States Sentencing Guidelines ("U.S.S.G.) § 1B1.13 describing circumstances under which a court may find an extraordinary and compelling reason for a sentence reduction. Later, Congress amended § 3582(c)(1)(A)(i) as part of the First Step Act of 2018. This amendment, for the first time, permitted motions for a sentence reduction based on extraordinary and compelling reasons to be filed by a defendant. 18 U.S.C. § 3582(c)(1)(A) (effective: December 21, 2018). Shortly after the enactment of the First Step Act, the Sentencing Commission lost its quorum, which it did not regain until 2022, and was unable to amend § 1B1.13 during that time. *Sentencing Guidelines for United States Courts*, 88 FR 28254-01.

During that period, the Seventh Circuit, along with nearly all other circuits, determined that § 1B1.13 was inapplicable to motions by prisoners and that it addressed only motions filed by the Director of the Bureau of Prisons ("BOP") "because the Sentencing Commission has not updated

its policy statements to implement the First Step Act." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *compare United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (holding § 1B1.13 did not apply to prisoner filed motions); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) (same); *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021) (same); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (same); *United States v. Shkambi*, 993 F.3d 388, 392-93 (5th Cir. 2021) (same); *United States v. Jones*, 980 F.3d 1098, 1110 (6th Cir. 2020) (same); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (same); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021) (same); *United States v. Long*, 997 F.3d 342, 359 (D.C. Cir. 2021) (same), *with United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that § 1B1.13 governed all motions under § 3582(c)(1)(A)). This left the parameters of an "extraordinary and compelling reason for release" within the District Judges' discretion constrained by the Seventh Circuit's warning that "a judge who strikes off on a different path [from § 1B1.13 as a working definition of extraordinary and compelling reasons] risks an appellate holding that judicial discretion has been abused." *Gunn*, 980 F.3d at 1180.

Another circuit split arose during this time over whether a non-retroactive change in the law may constitute an extraordinary and compelling reason for release. The Seventh Circuit held that a non-retroactive change to statutory mandatory minimum sentence was not an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i) and that a district court cannot consider such a change. *See United States v. Thacker*. As summarized by the Seventh Circuit:

> When deciding whether "extraordinary and compelling reasons", 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions. . . . There's nothing "extraordinary" about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.

*United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (cleaned up); *see also United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023) (quoting *United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction")). In so holding, the Seventh Circuit sided with a slight majority of circuit courts. *Compare United States v. Andrews*, 12 F.4th 255, 260–62 (3d Cir. 2021) (holding that non-retroactive changes in law are not permissible considerations); *United States v. McMaryion*, 64 F.4th 257, 259–60 (5th Cir. 2023) (same); *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (same); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) (same); and *United States v. Jenkins*, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022) (same), *with Ruvalcaba*, 26 F.4th at 16, 26–28 (holding that non-retroactive changes in sentencing law may be considered in light of a defendant's particular circumstances); *McCoy*, 981 F.3d at 286–88 (same); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (same), and *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (same).

The Sentencing Commission regained its quorum in 2022, and promulgated amendments to § 1B1.13. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited September 24, 2024). Among these changes were two additional subsections, (b)(6) and (c), which "operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons." *Id.* Subsection (b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the

sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6).  This provision is limited by subsection (c) as follows:

> Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

§ 1B1.13(c).

The Sentencing Commission submitted this change among other amendments to Congress on April 27, 2023.  *See*  https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited September 24, 2024). Congress did not act to modify or disapprove of these amendments, and they became effective on November 1, 2023.  *Id.*; *see* 28 U.S.C. § 994(p).

### III.  DISCUSSION

Mendoza argues that he establishes extraordinary and compelling reasons for release because a change in the law has produced a gross disparity between the sentence he received and the sentence he would likely receive today.  Current law governing compassionate release motions, provides that a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the Sentencing Commission promulgated the current guidelines interpreting § 3583(c)(1)(A)(i), the Seventh Circuit held that a district court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th

Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

As an initial matter, before addressing the substantive motion, the Court **denies** the Government's request to file a supplement because the Government has been given sufficient opportunity to fully brief the issues and their choice to omit argument on issues critical to a ruling on the motion does not entitle them to further briefing.

A.     **Extraordinary and Compelling Reasons**

Mendoza relies on § 1B1.13(b)(6) to establish extraordinary and compelling reasons for release. The Government argues that the holdings of *Thacker* and its progeny establish that the Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6). (Dkt. 97 at 4–9.) The Government argues that this provision is invalid because it undermines Congress' statutory scheme for sentence reductions. *Id.* at 10–11. The Government also contends that § 1B1.13(b)(6) is invalid because it creates tension with separation of powers principles and the Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6). *Id.* at 11–14.

1.     **Validity of § 1B1.13(b)(6)**

The first question the Court will answer in addressing Mendoza's Motion is whether the Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6). For several

reasons discussed below, the Court concludes that the Sentencing Commission did not extend beyond its authority in promulgating § 1B1.13(b)(6).

### a.    Potential conflict with *Thacker* and its progeny

First, § 1B1.13(b)(6) does not run afoul of *Thacker* and its progeny.  In *Thacker*, the Seventh Circuit held that "the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction."  4 F.4th at 574.  The court reasoned that "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district imposed for particular violations of a statute." *Id.* Later Seventh Circuit opinions following *Thacker* reiterated the position that law changes are not extraordinary.  *E.g., King*, 40 F.4th at 596.  However, *Thacker* and its progeny were premised on the fact that the Sentencing Commission had not yet released guidance as to prisoner-initiated compassionate release motions. *Thacker*, 4 F.4th 573–74 ("[U]ntil the Sentencing Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction.").  The Seventh Circuit did not have the benefit of the Sentencing Commission's analysis of the statute and did not consider the question of whether the Sentencing Commission's determination that the circumstances presented by § 1B13.1(b)(6) may be extraordinary and compelling is a *reasonable* interpretation of statute, which is the key question.  For that reason, the Court does not find that *Thacker*

precludes a finding that the Sentencing Commission's guidance in § 1B1.13(b)(6) was a reasonable interpretation of the statute.

This conclusion is supported by events that have occurred after the Seventh Circuit issued its opinion in *Thacker*. Since that time, the authority of the Sentencing Commission to promulgate § 1B1.13(b)(6) has been recognized by both the Department of Justice and the Seventh Circuit. Specifically, on multiple occasions, the Government opposed petitions for writ of *certiorari* to resolve the circuit split on the issue of whether changes in law can be considered extraordinary and compelling reasons for a sentence reduction on the grounds that the Sentencing Commission should be entrusted with resolving the split, including in successfully opposing granting *certiorari* in *Thacker*. Memorandum For the United States in Opposition to Grant of Certiorari, *Thacker v. United States*, No. 21-877, 2022 WL 467984 (U.S. Feb. 14, 2022); *see also, e.g.,* Brief For the United States in Opposition to Grant of Certiorari, *Jarvis v. United States*, No. 21-568, 2021 WL 5864543 (U.S. Dec. 8, 2021); Memorandum For the United States in Opposition to Grant of Certiorari, *Watford v. United States*, No. 21-551, 2021 WL 5983234 (U.S. Dec. 15, 2021); Memorandum For the United States in Opposition to Grant of Certiorari, *Williams v. United States*, No. 21-767, 2022 WL 217947 (U.S. Jan. 24, 2022).

In addition, after the *Thacker* opinion was issued but prior to the enactment of § 1B1.13(b)(6), the Seventh Circuit expressed hope that either the Sentencing Commission or the Supreme Court would resolve the split. *United States v. Williams*, 65 F.4th 343, 349 (7th Cir. April 13, 2023). It also recognized that the Supreme Court may choose not to take up the issue, which would ultimately leave the issues up to the Sentencing Commission. *Id.* ("We have no crystal ball, … All we can say is that the issue is teed up, and either the Commission or the Court (we hope) will address it soon."). Following the enactment of subsection (b)(6), the Seventh Circuit has also

recognized the newly enacted rule on no fewer than two occasions. *United States v. Williams*, 2023 WL 8868502, at *1 n.1 (7th Cir. Dec. 22, 2023) ("We acknowledge that the Sentencing Commission's proposed amendments to the Guidelines took effect on November 1, 2023. As relevant to Williams's motion, U.S.S.G. § 1B1.13(b)(6) permits courts to consider a change in the law. . . . [T]he new guideline does not alter our analysis here."); *United States v. Moore*, 2024 WL 890003, at *1 (7th Cir. Mar. 1, 2024) ("[W]ith one exception . . . claims about the validity of the original conviction or sentence cannot count toward a finding of extraordinary and compelling circumstances. . . . The exception arises under the Sentencing Commission's 2023 amendments to the Guidelines, which permits some defendants to seek early release based on intervening changes in constitutional or criminal law."). This approach is consistent with the approach of several district courts, including this one, that have declined to follow *Thacker* or their *Thacker*-analogous circuit holdings in light of the newly amended guidelines.[3] *See, e.g.*, *United States v. Spradley*, 2024 WL 1702873 (S.D. Ind. Apr. 18, 2024); *United States v. Capps*, 2024 WL 880554, at *7 (E.D. Mo. Jan. 31, 2024); *United States v. Brown*, 2024 WL 409062, at *6 (S.D. Ohio Feb. 2, 2024); *United States v. Bricker*, 2024 WL 934858, at *2 (N.D. Ohio Mar. 5, 2024); *United States v. Skeeters*, 2024 WL 992171, at *1 (E.D. Pa. Mar. 7, 2024).

---

[3] Other district courts in this circuit have not, to date, granted compassionate release in reliance on § 1B1.13(b)(6). *See e.g., United States v. Garza*, 2023 WL 7298975, at *1 (N.D. Ind. Nov. 6, 2023) (holding that the defendant is unable to pursue his compassionate release motion in light of *Thacker* without acknowledgment of the 2023 guidelines amendments); *United States v. Black*, 2024 WL 449940, at *12 (N.D. Ill. Feb. 6, 2024) (holding that the court could not defer to the Sentencing Commission's interpretation of statute and must apply *Thacker*). Recognizing that the issue is a close one, the Court respectfully disagrees with these opinions. Moreover, the Third Circuit has recently stated that it has "reaffirmed that nonretroactive changes in sentencing laws are not, by themselves, extraordinary and compelling reasons warranting sentence reduction." *United States v. Kramer*, 2024 WL 313389, at *3 (3d Cir. Jan. 26, 2024). However, this statement is dicta, and the Third Circuit has also acknowledged that it may later address the amended guidelines' effect on the validity of its prior holding prohibiting a district court from such a conclusion where a case presents the question directly. *United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023).

The role of the Sentencing Commission in addressing circuit splits is recognized both by statute and by the Supreme Court.  Within the statutory framework empowering the Sentencing Commission, Congress charged the Sentencing Commission with the duty to "periodically . . . review and revise . . . the guidelines."  28 U.S.C. § 994.  The Supreme Court has recognized that, in doing so, "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest."  *Braxton v. United States*, 500 U.S. 344, 348 (1991).  This is precisely what the Sentencing Commission did here.  The Sentencing Commission recognized their duty to "respond to a circuit split" of which *Thacker* was a part and determined it, rather than the Supreme Court, was the proper body for doing so in light of the Department of Justice's opposition to the Supreme Court taking up this question.  Amendments to the Sentencing Guidelines,        https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf at 5-6 (Nov. 2023).  Particularly given the Seventh Circuit's post-*Thacker* statements, *Thacker* and its progeny cannot be read to mean that the Seventh Circuit jettisoned the courts' historic deference to the Sentencing Commission before it even had the benefit of the Sentencing Commission's interpretation of the statute.  For all these reasons, the Court concludes that the holdings of *Thacker* and its progeny do not compel a finding that the Commission exceeded its authority in adopting §1B1.13(b)(6).

### b. Reasonable interpretation

Having concluded that *Thacker* and its progeny do not mean that § 1B1.13(b)(6) is *per se* an unreasonable interpretation of the statute, the Court considers whether the Sentencing Commission's interpretation is reasonable and concludes that it is.  Section 1B1.13(b)(6) permits a finding of an extraordinary and compelling reason for release only where (1) the defendant has

13

served at least 10 years, (2) the sentence is "unusually long," and (3) a change in the law has produced a "gross disparity" between the sentence being served and the sentence likely imposed at the time of the motion.  No sentence reduction may be granted without "full consideration of the defendant's individualized circumstances."  *Id.*  These narrowing provisions reflect the Commission's "tailored approach" toward sentence reductions based on a change in the law.  *Amendments to the Sentencing Guidelines* at 6 (Nov. 2023).  That is, the Sentencing Commission did not categorically open the possibility of relief to any defendant based on any non-retroactive change to the law.  Such changes must produce a "gross disparity" for relief to be granted and, even then, relief is available only to a subset of defendants with long sentences who have already spent a decade incarcerated.  *Id.*

Notably, fewer than 12% of federal offenders were sentenced to a term of 10 years or longer between 2013 and 2022, *id.*, which means that § 1B1.13(b)(6) potentially affords relief to a small proportion of inmates in the BOP and supports the conclusion that it applies only in extraordinary circumstances.  The Court agrees that there is nothing extraordinary about a change in the law alone, but the Sentencing Commission's interpretation of the statute is reasonable because such a change may become extraordinary and compelling when combined with a long sentence, of which a decade long portion has been served, and there is large difference between the sentencing scheme the defendant faced and the one he would face if sentenced today.

        **c.**     **Statutory scheme**

Further, § 1B1.13(b)(6)'s reasonableness is not undermined by any conflict with either the purposes of the Sentencing Reform Act or with other statutory vehicles that may result in a sentence reduction including 18 U.S.C. § 3582(c)(2) and 28 U.S.C.A. § 2255 because of these same narrowing provisions.  As stated above, one of the purposes of the Sentencing Reform Act

was Congress' distaste for unwarranted sentencing disparities.  S. Rep. No. 98-225, at 52 (1983) (Senate Report)) ("A primary goal of sentencing reform is the elimination of unwarranted sentencing disparity.").  Section 1B1.13(b)(6) functions to eliminate similar disparities that arise across time.

Rather than working at cross purposes, § 1B1.13(b)(6) allows § 3582(c)(1)(A) to work together with § 3582(c)(2) to reduce sentences.  Section 3582(c)(2) permits the court to lower a sentence based on retroactive changes to the guidelines.  This allows reductions (after individualized considerations) when a guidelines change is retroactive, which contrasts with § 3582(c)(1)(A) in allowing reductions where changes in the law are not retroactive only under exceptional and rare circumstances (and also after considering individualized considerations). Section 1B1.13(b)(6) thus does not trample on (c)(2) as a procedural vehicle to render all changes in the law retroactive because only a small number of defendants, those who fit within the narrowing provisions, qualify if the change affecting their sentence is not retroactive.  Similarly, though the Seventh Circuit expressed concern that deciding that changes in law could create extraordinary and compelling reasons for relief would "create[] tension with the … post-conviction relief in 28 U.S.C. § 2255," this concern arose before the promulgation of § 1B1.13(b)(6)'s tailored approach.  *Thacker*, 4 F.4th at 574.  The narrowing provisions address this concern by removing the possibility of relief from the vast majority of federal defendants.

Lastly, § 1B1.13(b)(6) fits squarely within the legislative judgments and structures created by Congress as Congress instructed the Sentencing Commission to describe circumstances in which extraordinary and compelling reasons for release exist. Congress created one specific carveout prohibiting a court from finding the rehabilitation of a defendant alone to be an extraordinary and compelling reason for release.  28 U.S.C. § 994(t) ("The Commission, . . . shall

describe what should be considered extraordinary and compelling reasons for sentence reduction. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Congress made no other prohibitions on what may constitute extraordinary and compelling reasons for release. Congress could have issued a prohibition on changes in the law creating extraordinary and compelling reasons for release but did not do so and chose to leave such judgments to the Commission itself. *See Concepcion v. United States*, 597 U.S. 481, 483 (2022) ("Congress has shown that it knows how to direct sentencing practices in express terms."). The Sentencing Commission's judgment that non-retroactive changes in law may constitute extraordinary and compelling reasons for release fits within the discretion given to them by Congress.

### d. Separation of Powers

Finally, finding § 1B1.13(b)(6) to be valid does not implicate concerns that the Sentencing Commission—an independent agency in the judicial branch—has usurped Congress' legislative determinations regarding retroactivity. Section 1B1.13(b)(6) was itself approved by Congress. All amendments or modifications to the Sentencing Guidelines must be submitted to Congress and do not go into effect until at least 180 days have passed without modification or disapproval by Congress. 28 U.S.C. § 994(p). For that reason, Congress' tacit approval is required for any modification to the Sentencing Guidelines. *See id.* Section 1B1.13(b)(6) was submitted to Congress on April 27, 2023. https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited September 24, 2024). Congress took no action to modify or disprove of the amendment, and § 1B1.13(b)(6) went into effect on November 1, 2023. *Id.* There are no separation of powers concerns where Congress itself approved the promulgation of

16

this rule through the legislatively created structure for ensuring Congress did not disapprove of any sentencing guidelines amendments.

For all of these reasons, the Court holds that the Sentencing Commission did not exceed its authority in promulgating § 1B1.13(b)(6), and the provision is valid even in light of *Thacker*.

### 2.    Applicability to Mendoza

Mendoza relies on § 1B1.13(b)(6) and contends that the disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary and compelling reason to release him. He points to two specific changes which he contends would result in a different sentence today. First, the First Step Act reduced the mandatory minimum sentence for his offense and criminal history from life to 10 years. (Dkt. 91 at 5.) He argues this change to his mandatory minimum would have a secondary effect of resulting in him taking responsibility for his offense and therefore receiving an offense level reduction from 38 to 36. (Dkt. 91 at 11 n.4.) Second, he asserts that his Washington state conviction would no longer qualify him as a career offender, reducing his criminal history category from VI to III. *Id.* He argues the cumulative total of these changes would result in a guidelines sentencing range of 235–293 months. *Id.*

The Government does not challenge Mendoza's contention that his mandatory minimum sentence would be 10 years today. *See* Dkt. 97. However, it contends that neither of the other two changes in law would in fact affect Mendoza's sentence. *Id.* at 15–18. The Government's position is that because he would have an offense level of 38 and criminal history category of VI (due to his status as a career offender), his guidelines range would still be 360 months to life imprisonment. *Id.* The Government further argues that the difference between a life sentence currently being

served and a guidelines range of 360 months to life under current law cannot be considered a "gross disparity." *Id.* at 2.

The Court finds that the only change in the law that would affect Mendoza's sentence is the change to his mandatory minimum sentence in the First Step Act. With regard to Mendoza's claim that his Washington state conviction could no longer qualify him as a career offender, whether this is in fact a change in the law is, at best, unclear. Mendoza argues that his statute of conviction in Washington for conspiracy to deliver heroin encompassed a unilateral theory of conspiracy in addition to the bilateral. (Dkt. 91 at 11 n.4.) The unilateral theory allows a conspiracy conviction where a person "conspires" with another individual (typically an undercover officer) who does not in fact intend to enter into the conspiracy. *United States v. Brown*, 879 F.3d 1043, 1048 n.2 (9th Cir. 2018). He contends that this statute is broader than the federal statute, which he says only encompasses the bilateral theory (that both individuals must intend to enter the conspiracy for a conspiracy conviction). (Dkt. 91 at 11 n.4.) He argues that because the Washington statute is broader than the federal parallel statute, a conviction under the Washington statute cannot be used to establish career offender status. *Id.*

This is wrong for two reasons. First, Mendoza's conviction occurred in 1992 under a statute which Washington courts later declared covered only the bilateral theory. *State v. Pacheco*, 882 P.2d 183, 186 (Wash. 1994); *see United States v. Brown*, 879 F.3d 1043, 1049 (9th Cir. 2018) (holding that the Washington statute, as amended following *Pacheco*, encompassed both unilateral and bilateral conspiracy theories). Second, whether this distinction is relevant to career offender status, remains undetermined in federal law. In *United States v. Pemberton*, the Seventh Circuit considered whether a district court committed clear error when it decided that a conviction under Indiana's conspiracy statute constituted a serious violent felony. 85 F.4th 862 (7th Cir. 2023). The

court determined that the court did not commit clear error because it is unclear whether federal law covers the bilateral theory only or covers both. *Id.* at 868. Because federal law is unclear on this issue, Mendoza cannot claim that there is a change in the law that would render his conviction ineligible to enhance his sentence.

As to Mendoza's argument that without the life mandatory minimum he would have pled guilty, not taken his case to trial, and received an offense level reduction for acceptance of responsibility, the Court finds that this does not constitute a "change in the law" which would qualify him under the guidelines. First, there is no evidence that Mendoza was willing to take responsibility. In fact, his sentencing hearing transcript indicates that he still maintained his innocence at that time. (Dkt. 97-1 at 4.) Second, this assertion is entirely speculative because the Court is being asked to guess what would have happened in plea negotiations in the hypothetical scenario in which he would not be facing mandatory life imprisonment. Speculative differences in decisions and strategies that defense attorneys, prosecutors, and defendants may have undertaken cannot be considered a "change in the law" that has produced a sentencing disparity.

Ultimately, the Court concludes that if Mendoza were sentenced today, he would face a mandatory minimum sentence of 10 years and a guidelines range of 360 months to life imprisonment. To determine the sentence he would likely receive today, the Court must analyze the § 3553(a) sentencing factors. Based upon the analysis of these factors below, the Court determines that the sentence Mendoza would likely receive if sentenced today is 360 months. Mendoza is 55 years old and has served nearly 20 years in the BOP, (Dkt. 60 at 1–2). A 30-year sentence gives Mendoza hope of release from prison where a life sentence permits no such hope. The Court determines the difference between a determinate sentence which would likely one day end and the permanence of a life sentence to be a "gross disparity" under the guidelines.

Further, there is no dispute that Mendoza has served more than 10 years of his sentence. *See* Dkt. 60 at 1. There can also be no doubt that Mendoza's life sentence is unusually long as few federal offenders have received life sentences in recent years. *See* U.S. Sent'g Commission, "Life Sentences in the Federal System," at 5 (July 2022) ("Life sentences have remained a very small proportion of the federal offender population over the last 20 years (between 0.1% and 0.5%)"). For these reasons, Mendoza has met each element of § 1B1.13(b)(6) and has shown that an extraordinary and compelling reason for a sentence reduction exists.

## B.     Danger to any Other Person or the Community

The Sentencing Guidelines specify that compassionate release is appropriate *only* where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Section 3142(g), which sets out the factors the court must consider in determining whether a defendant should be detained pending trial, guides the court's release determination under post-incarceration circumstances as well. It is a familiar litany to every federal district court judge.

> **(g) Factors to be considered**.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including—
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the ¶community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person

> was on probation, on parole, or on other release pending trial,
> sentencing, appeal, or completion of sentence for an offense under
> Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community
> that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mendoza's counsel argues that "Mendoza is a 55-year-old man with serious health problems and no history of violence." (Dkt. 91 at 17). Bureau of Immigration and Customs Enforcement records indicate that Mendoza is an illegal immigrant, and he was previously deported on December 23, 1993, and April 18, 1994, therefore, he is likely subject to deportation following completion of the executed portion of this sentence. (Dkt. 60 at 12).

Mendoza's crimes were without a doubt very serious. He was a leader in a large-scale conspiracy to distribute methamphetamine in the Indianapolis, Indiana, area and was personally responsible for the distribution of large quantities of methamphetamine. (Dkt. 60 at 5–7.) While he does have a criminal history that includes two felony convictions, he has no history of violence or weapons possession. (Dkt. 60 at 9-10). Mendoza was 23 years old when he was arrested and later convicted of conspiracy to deliver heroin (felony) which concerned a controlled buy to a confidential source. *Id*. at 9 ¶ 40. He was sentenced on December 17, 1993, to 90 days confinement, 12 months' community supervision, and he successfully completed his sentence. *Id*. On February 18, 1994, at the age of 25, Mendoza was arrested and later convicted of Possession or Purchase for Sale of Narcotic Controlled Substance (felony and the substance was marijuana) and sentenced to 72 days incarceration; followed by 3 years' probation. *Id*. at ¶ 41. He was on community supervision for this offense when he committed the instant offense. *Id*. ¶ 44. Mendoza's remaining conviction is a 2002 misdemeanor operating a motor vehicle while intoxicated, for which he was sentenced to 2 days executed, a $75.00 fine, and 361 days probation

for which he was satisfactorily discharged. *Id.* at ¶ 42. But these convictions will be nearly four decades old by the time he is released, and Mendoza's criminal activity related to this case will be several decades behind him by the time he is released.

Mendoza also has a strong release plan. When released, he "will live with his sister (Maria Mendoza) in Tijuana, Mexico. His sister will allow Mr. Mendoza to live in her home. Mr. Mendoza's sister works in a factory in Tijuana, and she will get Mr. Mendoza a job there. Further, Mr. Mendoza in part owns his mother's home in Mexico. Sadly, his mother passed away approximately 3 years ago. She left her home to Mr. Mendoza and his sibling." (Dkt. 91-2 at 4).

For these reasons, the Court finds that Mendoza's release after the completion of a 30-year sentence of incarceration followed by ten years of supervised release, will not pose a significant threat to the safety of any person or the public.

## C.    Section 3553(a) Factors

Mendoza asserts that the § 3553(a) factors weigh in favor of his release.  (Dkt. 91 at 21–22.)  As noted above, the Government opted not to make any arguments regarding these factors (Dkt. 97 at 2), however, the record contains sufficient information for the Court to make this determination.

Section 3553(a) provides:

**(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>    **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>    **(2)** the need for the sentence imposed—
>>        **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>        **(B)** to afford adequate deterrence to criminal conduct;
>>        **(C)** to protect the public from further crimes of the defendant; and

      **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence[s] and the sentencing range established for—

      **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]

**(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Mendoza has a disciplinary record that includes just two violations--phone abuse in 2021, and ownership of contraband in 2019--neither of which was violent. (Dkt. 91-4 at 1.) Mendoza has earned his GED while incarcerated and engaged in a substantial number of educational programs, participating in over 1,800 hours of courses in the BOP. (Dkt. 91-5 at 1–2.)

Weighing against Mendoza's request for outright release, as stated, his crimes were serious and his leadership role in committing them (while under supervision) is aggravating. However, also as stated above, Mendoza's criminal record will have aged significantly by the time of his release, and he will still be spending multiple decades in the BOP for his crimes, which is a significant punishment.

In light of these considerations, the Court finds that the § 3553(a) factors justify a reduction of Mendoza's sentence but not a reduction to time served, as he requests. A 360-month sentence—the guideline minimum—followed by a 10-year term of supervised release is sufficient but not greater than necessary to deter Mendoza from further criminal conduct, reflect the seriousness of his offense, provide just punishment, promote respect for the law, and to ensure the safety of the

public from future crimes. The Court also believes this sentence avoids unwarranted sentence disparities.

### IV.  CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mendoza's sentence of life imprisonment to 360 months.  The Court finds that Mendoza does not pose a danger to any other person or the community under the conditions of release, the § 3553(a) factors support a reduction, and his sentence reduction is consistent with the Sentencing Commission's applicable policy statements.  The Court **GRANTS** Mendoza's Motion for Sentence Reduction, Dkt. [91], and **ORDERS** that Mendoza's sentence of imprisonment be reduced to **360 months**.  The previously imposed 10-year term of supervised release remains unchanged.  The terms of supervised release remain unchanged.

The Probation Officer **shall prepare an amended judgement** for the Court's signature.

**SO ORDERED.**

Date:  12/2/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jacob D. Leon
INDIANA FEDERAL COMMUNITY DEFENDERS
jacob_leon@fd.org

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov

Colin Clark
UNITED STATES ATTORNEY'S OFFICE
colin.clark@usdoj.gov

Electronic Notice to USPO